Public Operating Corporation, Respondent, *v.* Richard I. N. Weingart, Individually and as Receiver in Foreclosure of the Premises Known as 98 Montague Street, Brooklyn, New York, Appellant

First Department, June 29, 1939.

*John F. Caskey* of counsel [*John R. McCullough* with him on the brief; *Dwight, Harris, Koegel & Caskey,* attorneys] for the appellant.

*Samuel Rubin,* for the respondent.

COHN, J.   The action is in replevin.   Respondent is the assignee of the trustee in bankruptcy of Krip Holding Corporation (hereinafter referred to as " Krip ").   The chattels claimed by respondent were used in the Bossert Hotel located in Brooklyn.   For some years prior to 1934 the hotel had been owned by Estate of Louis Bossert, Inc.   A mortgage upon the property in the sum of $700,000 was held by the Title Guarantee and Trust Company.   On June 12, 1934, Estate of Louis Bossert, Inc., leased the hotel to Krip, conditioned upon the payment as rent of all the net earnings of the hotel.   Krip operated the hotel until September 23, 1936. During the time it was in possession, Krip purchased linens, silverware, glassware, furniture, carpets and other furnishings and equipment with its own funds and upon its own credit, for use in the hotel.

On September 18, 1936, an action was commenced to foreclose the mortgage held by Title Guarantee and Trust Company.   In the foreclosure action appellant was appointed receiver of the mortgaged premises.   He entered into possession of the hotel on September 23, 1936.   Before doing so, he made a written agreement with Krip whereby he rented from the latter the personal property used in the hotel, belonging to Krip, " at an annual sum equivalent to twenty-five per cent (25%) of the present value of the said property, said value  *  *  *  to be computed by taking the original, actual cost to the Krip Holding Corp. and deducting therefrom the usual depreciation as recommended by Harris, Kerr & Forster and another such hotel accounting firm of equal standing to be named by the receiver, payable monthly in advance."

Appellant used Krip's personal property from September 23, 1936, to September 30, 1937.   An involuntary petition in bankruptcy was filed against Krip while appellant was in possession of the mortgaged premises, and a trustee was appointed from whom this plaintiff derives title to the chattels and the claim which it now makes for their use.

Respondent made a demand on appellant on August 27, 1937, for a return of the chattels.   Appellant failed to comply.   For his refusal to deliver the chattels upon demand and for failure to pay rent for their use from September 23, 1936, to August 27, 1937, pursuant to the agreement, respondent recovered the judgment appealed from.

The evidence in the case sustains the jury's determination that at the time of the commencement of the action appellant had possession of certain chattels belonging to respondent which had been purchased by Krip with its own funds and upon its own credit.

We find, however, that the court committed prejudicial error in submitting to the jury a document which was marked " Plaintiff's Exhibit 68 for identification." This exhibit was a written summary of facts and figures based in part upon the primary evidence given at the trial, and prepared by respondent's counsel at the request of the trial court. It was not marked in evidence. The writing set up in tabular form portions of the testimony affecting each of the items to which respondent made claim. In separate columns there was stated a description specifying the quantity of the chattels, their cost, period of " Depreciation," " Depreciated Cost 9/23/36," " Present Value " and " Witness as to Value." This tabulation was handed to the trial court after both sides had rested and had summed up the evidence, and just before the court had begun to deliver its charge to the jury. ·Over the strenuous objection of appellant, the court, upon the conclusion of its charge, delivered the paper to the jury for use in its deliberations.

In its charge to the jury the court instructed the jurors that they were " not bound in any way by any statements made thereon" (Plaintiff's Exhibit 68 for identification) and that they might exercise their own judgment with respect to the use of those figures; he also stated, " this is handed to you solely and only for the purpose of helping you in what is now your duty to perform." It was the court's desire to aid the jury in making the necessary calculations in the event that it decided in plaintiff's favor. Under the statute, in a replevin suit, the jury is required separately to find with respect to each item and the value thereof. (Civ. Prac. Act, §§ 1120, 1122.) It cannot be doubted that in an involved case of this character an exhibit of this kind, if properly received, might be most helpful in enabling the jury to make an intelligent determination of the issues involved. However, where receipt in evidence of such an exhibit is objected to, the person who has prepared the document or one who is in a position to testify as to the accuracy of its contents should take the stand and under oath verify the correctness of the calculations set forth. At the same time, ample opportunity should be afforded to the adverse party to cross-examine such witness upon the statements and valuations contained in the document. Here appellant was deprived of the right of inquiring into the method by which some of the calculations

on the exhibit had been made. Moreover, he had no opportunity of making any comment on this exhibit during his summation to the jury for he had no knowledge that such an exhibit would be received or that it would be submitted to the jury.

When documents introduced in evidence at a trial are voluminous and of such a character as to render it difficult for the jury to comprehend material facts without schedules containing abstracts thereof, it is within the discretion of the judge to admit such schedules provided they are based on facts in evidence, verified by the testimony of the person by whom they were prepared, and provided that the adverse party is permitted to examine them to test their correctness and to cross-examine upon them before the case is submitted to the jury. (*Boston & Worcester Railroad Corporation* v. *Dana*, 67 Mass. 83, 87, 104; *Rollins* v. *Board of Comrs.*, 90 Fed. 575, 583; 2 Wigmore on Evidence [2d ed.], § 1230.)

As this case was otherwise carefully tried, we would be disposed to disregard the error if it were shown to be harmless. However, we are unable to say that this exhibit might not have improperly influenced the jury in its assessment of damages against appellant.

One of the contested issues for determination was the proper measure of value for the chattels wrongfully detained by defendant. Respondent insisted that it was the value of the property for use in the hotel. It was appellant's contention, and the court subsequently so charged, that it was the value after the property had been removed from the hotel. Much of respondent's testimony as to the value was not in accord with the judge's charge. The figures on the exhibit under the column " Present Value' ' were all founded on respondent's incorrect theory of fixing value and might well have been misleading to the jurors in spite of the correctness of the court's charge on the question of value.

As to the column " Depreciated Cost 9/23/36," there is no evidence as to how figures under this heading were obtained. The amounts set forth in this column apparently purported to show the cost of each item of property after depreciation as of September 23, 1936, the day appellant went into possession and rented the chattels pursuant to his written agreement. Obviously, these figures were to be considered by the jury upon the question of rental value of the chattels as claimed in the second cause of action. However, the sums were not shown to be the calculations of any witness who had been sworn or subjected to cross-examination, nor were the sources of the information which supplied the basis for calculations of depreciation disclosed by any one. When counsel for respondent attempted to explain to the court how the computation of depre-

ciated cost had been arrived at, appellant's counsel properly requested that the person who made the computation take the witness stand. That was not done.

The law is well settled that it is improper to permit the jury in arriving at its verdict to consider papers or documents not in evidence and which tend to influence the verdict of the jury. (*Matter of Roberts,* 246 App. Div. 87; *Lamphear* v. *MacLean,* 176 id. 473; *Long* v. *Payne,* 198 id. 667; *Mitchell* v. *Carter,* 14 Hun, 448.) Parties to a litigation should have their causes tried upon competent and relevant evidence submitted in open court where each side is afforded a fair opportunity of cross-examination. Documents not received in evidence may not be considered by a jury in their deliberations and a verdict predicated thereon must be set aside unless it can be shown that the jury could not have been influenced thereby.

In *Matter of Roberts (supra),* in a situation somewhat similar to the one presented here, the court said (at pp. 92, 93):

" True, the surrogate admonished the jury that the memorandum was not an exhibit in the case. He said further, ' It is just part of his argument ' — referring to counsel for the proponent. But the jury was also instructed, ' It is a summary of a complex situation. I will let them have it as a summary. * * * You can give it such weight, or any part of it, as you see fit.' The right to challenge this ruling was preserved to the appellants by objection and exception which we conclude were well taken.

" *We cannot say that the memorandum thus submitted to the jury influenced the verdict; nor can we say with assurance that it failed of such influence. Certain it is, however, that in part it was an extraneous influence, not entirely supported by the record, and was presented to the jury to guide the deliberations upon which they were about to enter.*

" It is a salutary rule — not a mere ' dictate of formalism ' — which requires us to protect a verdict against any possibility of a miscarriage of justice which might result from a jury's consideration of a statement containing unproved facts." (Italics ours.)

We are unable to say what effect this document, which had not been admitted into evidence, had upon the jury. That the verdict might have been influenced by the improper use of some of the items set forth seems entirely clear. In the circumstances, the submission of the document to the jury was prejudicial error which requires that a new trial be granted.

We think, too, that the court should have submitted to the jury, as an issue of fact, the question as to whether or not the two port-

able bars belonging to Krip which were fastened to the floor and walls of the hotel building had become a part of the realty; so, also. with respect to the ventilators built into the doors of the hotel. (*McRea* v. *Central Nat. Bank of Troy*, 66 N. Y. 489, 495; *Tifft* v, *Horton*, 53 id. 377; *Manufacturers Trust Co.* v. *Peck-Schwartz R. Corp.*, 277 id. 283, 286.) There was evidence in the case that the bars and the ventilators were permanent additions and improvements built specifically for the hotel. If the jury should accept such evidence as true, there could be no recovery of these items.

For the foregoing reasons, the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

The order entered on November 19, 1937, denying defendant's motion to dismiss the complaint upon the ground that there is an existing final judgment between the parties and upon the further ground that the cause of action did not accrue against the defendant individually, should be in all respects affirmed.

MARTIN, P. J., GLENNON and UNTERMYER, JJ., concur.

DORE, J. (concurring). Plaintiff having brought the action in replevin, it was essential that plaintiff establish its own right to possession; that defendant had possession of the particular chattels sought to be recovered and wrongfully withheld the same; and that plaintiff identify the specific chattels sought. Plaintiff failed to sustain this burden of proof as it failed to identify the specific chattels alleged to have been purchased by Krip with its own funds and upon its own credit and claimed to be in defendant's possession. It is at least a fair inference that not all of the chattels claimed by Krip were purchased with its own funds or upon its own credit and that some of them were purchased out of the operating income of the hotel, in managing which Krip was merely the agent or instrumentality of the mortgagor.

Defendant, a receiver in foreclosure, has been held individually liable for a judgment in the sum of $8,170, the value of the chattels (unless returned), and in addition for a judgment of $8,652.70 for the alleged damages for retention and agreed rental of the chattels. The written agreement between Krip and defendant for the rental of personal property belonging to Krip expressly provided that if the receiver failed to pay the rent " because of financial inability or termination of his operation of the hotel," the Krip Corporation should have only the right to repossess and " shall then have no further claim upon the receiver." The agreement also provided that an inventory be taken. No inventory was taken, nor did defendant prevent the taking of an inventory. It is obvious that

any inventory of the chattels, if made by defendant alone, would not indicate the specific chattels purchased by Krip out of its own funds.

For the reasons stated and in addition for the errors indicated in the majority opinion, I concur in the result that the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

Judgment unanimously reversed and a new trial ordered, with costs to the appellant to abide the event. Order denying defendant's motion to dismiss the complaint unanimously affirmed.