**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000690
05-DEC-2024
08:39 AM
Dkt. 90 SO**

NO. CAAP-21-0000690

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

MARGARET HEARN, Individually and as Personal Representative
of the Estate of Clifford J. Hearn, deceased,
Plaintiff-Appellant/Cross-Appellee,
v.
ASSOCIATION OF APARTMENT OWNERS OF SUN VILLAGE-KAUAI
(by and through its Board of Directors); CERTIFIED MANAGEMENT,
INC., doing business as ASSOCIA HAWAII, a Hawai'i for-profit
corporation, Defendants-Appellees/Cross-Appellants,
and
RANDY LEONARD; TY MILLER; LILIANNE WADAHARA; FELY FAULKNER; RICH
JASPER, Defendants-Appellees, and DOE DEFENDANTS 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CASE NO. 5CC191000018)

**SUMMARY DISPOSITION ORDER**
(By: Leonard, Acting Chief Judge, Hiraoka and McCullen, JJ.)

**Margaret** Hearn, for herself and as personal
representative of the Estate of **Clifford** J. Hearn, appeals from
the November 2, 2021 Final Judgment for the Association of
Apartment Owners of Sun Village-Kauai, Randy Leonard, Ty Miller,
Lilianne Wadahara, Fely Faulkner, and Rich Jasper, and Certified
Management, Inc. dba Associa Hawaii (collectively, the **AOAO**)
entered by the Circuit Court of the Fifth Circuit.[1]  We affirm.

---

[1]    The Honorable Randal G.B. Valenciano presided.

Margaret sued the AOAO on February 8, 2019, for the wrongful death of her husband, Clifford. The Hearns lived in Sun Village, a retirement community on Kauaʻi. A pull-cord system was installed in each unit. A resident having a medical emergency could pull the cord to sound an alarm. Margaret went to Honolulu for a surgical procedure around February 11, 2017. Some time before February 16, 2017, Clifford used the pull-cord. Several neighbors heard the alarm and went to the Hearns' apartment to check, but left after receiving no response. Clifford was found dead in the Hearns' unit on February 16, 2017. The pathologist who performed an autopsy opined that Clifford had been dead for two to five days before he was discovered.

On July 7, 2021, a jury found that the AOAO were not negligent and did not commit an unfair or deceptive act or practice. Margaret moved for judgment as a matter of law or a new trial on August 13, 2021 (the **Post-Trial Motion**). The circuit court denied the Post-Trial Motion. The Final Judgment was entered on November 2, 2021. This appeal followed.

Margaret states eight points of error, but her argument does not follow her points. We address her arguments in the order made. Points not argued are waived. Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(7).

**(1)** Margaret argues she should have been granted a new trial because the AOAO's representative, Fely **Faulkner**, had ex parte contact with jurors. Trial began on June 28, 2021. On July 1, 2021, Faulkner was examined by counsel. She acknowledged being told by the trial court, the AOAO's attorney, and her attorney not to talk to jurors. She admitted talking to two jurors, once. She said, "hello" and "don't go to sleep." She testified she may have been trying to communicate that the trial would be boring. She denied speaking to other jurors. Margaret requested entry of default against the AOAO.

The court then examined its bailiff. The bailiff testified he saw Faulkner have contact with jurors three times. The first time, she waved at a juror who had been excused, and

2

the juror waved back.  The bailiff admonished Faulkner.  The second time, Faulkner said "good morning" to a juror in the hallway.  The juror did not acknowledge her.  The third time, she said "good morning, I hope it's a good morning for you" to two jurors walking past her.  The jurors "made no attempt to even acknowledge her."

Margaret renewed her request for a default.  The court stated, "default is a drastic request, and so the Court's not going to grant default. . . . I think the remedy that she testifies and then she's excused is an appropriate remedy." Margaret did not move for a mistrial.

On July 6, 2021, before the jury began deliberations, the trial court reported that a juror (**Bedwell**) "discovered that they may be doing some business with Sun Village."  Bedwell was examined by the court and counsel.  She stated her husband was a commercial real estate appraiser and Sun Village is his client for a ground lease appraisal.  She did not know this until the day before.  She did the accounting for their business and had never been to the property.  She did not know the contract amount.  She stated she could be impartial.

Margaret asked that Bedwell be excused.  The AOAO objected, because Bedwell said she could be fair and her relationship with the AOAO was "tenuous."  Bedwell was recalled and said this was the first time she's heard her husband do an appraisal for Sun Village, he'd been working for about a month, and he was almost done.  Bedwell stated she "will be impartial." The court denied Margaret's request to excuse Bedwell because "the underlying goal of the Court is to get jurors who can be fair and impartial."

On July 7, 2021, after the jury began deliberations, the bailiff reported that a juror (**Tassler**) said another juror (**Nakamoto**) told the jurors she "contacted the county clerk to find out more information about this case.  She said that the county clerk had told her that, oh, that case, that's already been tried once before."  Tassler said he told the other jurors

3

they "should not be considering anything other than what we've seen in court. And they continued with their deliberations." Tassler was examined and related the same information.

Nakamoto was examined. She denied investigating the case. She said she called the court clerk to ask if she "could be excused because it was a two-week case. And [the clerk] said, oh, it's a re-trial, it shouldn't last more than a week."

The court stated:

> So the impression I'm getting is she didn't conduct her own investigation. She was inquiring how long will the case take. And for some reason, the clerk said it's a re-trial and it shouldn't last longer than a week, which is two things not accurate.
>
> So she received inaccurate information from the court clerk inquiring about the length of the trial. And I think part of it was Ms. Nakamoto knew she had something on the 9th, which she told us she has some kind of family funeral on the 9th.

The AOAO asked for a mistrial. Margaret did not. The court denied the AOAO's request. The court instructed the jury that the trial was not a re-trial, and repeated its standard cautionary instructions. The jury continued deliberating. The verdict was returned later that day.

On August 13, 2021, Margaret filed the Post-trial Motion. It argued jury tampering by Faulkner; it made no argument about Bedwell or Nakamoto. The order denying the Post-trial Motion was entered on November 2, 2021. We review the denial of a new trial for abuse of discretion. Chen v. Mah, 146 Hawaiʻi 157, 172, 457 P.3d 796, 811 (2020).

Margaret relies on Dwight v. Ichiyama, 24 Haw. 193 (Haw. Terr. 1918), Federcell v. Cockett, 33 Haw. 840 (Haw. Terr. 1936), and State v. Pokini, 55 Haw. 640, 526 P.2d 94 (1974). In Dwight, a juror reported that a stranger had come to his house and asked him to find for the defendant. Two of the defendants moved for a mistrial. The plaintiff did not join or object. The motion for mistrial was denied. The jury returned a verdict for the two defendants who had moved for a mistrial. The plaintiff

4

moved for a new trial. The trial court denied the motion. The plaintiff appealed. Of the plaintiff, the supreme court held: "If he had desired to take advantage of the attempt to influence the jury he should have done so at the time, and failing to do so then must be regarded as having waived the irregularity." 24 Haw. at 196. Here too, Margaret did not move for a mistrial after Faulkner's conduct was revealed. She could also have moved for a mistrial after the Nakamoto incident (as did the AOAO), but she didn't.

The conduct at issue in <u>Federcell</u> and <u>Pokini</u> was significantly more prejudicial than that of Faulkner. On this record, we cannot say that the trial court abused its discretion by denying a new trial based on Faulkner's conduct.

**(2)** Margaret argues that "[t]he AOAO's withholding/ destruction of evidence warranted JNOV/JMOL or at a minimum new trial below." On July 1, 2021, Faulkner was asked:

> Q. . . . But you're aware of Mr. -- well, of Associa sending out a notice after Mr. Hearn died saying, hey, we're taking the system off-line?
>
> A. Not really. I -- in looking over some of my records, I saw an e-mail that was like not really complete. It came from one of the administrative assistants at Associa, and it was dated 2016. And I tried getting the source, the actual source document. I couldn't get it. But there was a notice that said that the system was going to be deactivated, and this was in 2016.
>
> . . . .
>
> Q. Okay. And was that document produced to us in this case; do you know?
>
> A. No, because I just found it.
>
> Q. Just as in when? Last week or --
>
> A. About three weeks ago.
>
> . . . .
>
> Q. Okay. And how did you find that document?
>
> A. I found it at the bottom of a stack of documents.

A copy of the document Faulkner found was given to Margaret's counsel on July 2, 2021. It was marked as exhibit P-125, but not

received into evidence.  The record shows that during a side-bar, counsel and the court were confused about what the document actually was.  The court let Margaret examine witnesses about the document's contents.  The record does not contain a copy of the document.

Margaret relies on <u>Wong v. City & Cnty. of Honolulu</u>, 66 Haw. 389, 665 P.2d 157 (1983).  There, the plaintiff was hit by a car while crossing a signalized intersection.  She sued the City, claiming the traffic signal malfunctioned.  She requested production of the traffic signal control box.  The City removed and destroyed the control box.  As a discovery sanction under Hawai'i Rules of Civil Procedure (**HRCP**) Rule 37(b)(2), the trial court ordered a finding that the control box malfunctioned because of the City's negligence.  The supreme court held the sanction was "commensurate with the prejudice suffered by the plaintiffs as a result of the City's destruction of the traffic signal control box."  <u>Id.</u> at 394, 665 P.2d at 161.  Here, Margaret has not shown she was entitled to a discovery sanction. She hasn't cited to a discovery request in the record[2] encompassing the document found by Faulker; the AOAO's response to the request; or the contents of the document to show how she was prejudiced.

Margaret also relies on HRCP Rules 59 and 60(b)(2) as authority for a "new trial based on newly discovered evidence[.]" She hasn't shown that she served a discovery request that encompassed the document Faulkner found three weeks before trial — that is, that it was "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)[.]"  HRCP Rule 60(b)(2).  On this record, we cannot say the trial court abused its discretion by denying the request for a new trial.

---

[2]     Margaret's reply brief cites to the AOAO's answering brief, but statements in a brief are not evidence in the record.

Nor was the trial court wrong to deny the request for judgment as a matter of law. We review a ruling on a motion for judgment as a matter of law de novo. <u>Fisher v. Grove Farm Co.</u>, 123 Hawaiʻi 82, 93, 230 P.3d 382, 393 (App. 2009). Judgment as a matter of law "may be granted only when after disregarding conflicting evidence, giving to the non-moving party's evidence all the value to which it is legally entitled, and indulging every legitimate inference which may be drawn from the evidence in the non-moving party's favor, it can be said that there is no evidence to support a jury verdict in his or her favor." <u>Id.</u> at 94, 230 P.3d at 394. The trial evidence, viewed in the light most favorable to the AOAO, supported the jury's verdict.

**(3)** Margaret argues that "[t]he defense of comparative fault was wrong, unwarranted and caused confusion[.]" The AOAO's answer asserted the Hawaii Revised Statutes (**HRS**) § 663-31 affirmative defense of comparative negligence. The jury was instructed, over Margaret's objection, on comparative negligence. The jury never reached the issue. It found that the AOAO was not negligent and did not commit an unfair or deceptive act or practice, and answered "no" to the first two questions on the special verdict. The special verdict then instructed: "If your answers to question #1 AND #2 is NO as to BOTH defendants, then sign and date the verdict form." The jury never got to question no. 3, whether Margaret or Clifford were negligent. Any error in giving the jury instruction was harmless.

**(4)** Margaret argues that "[i]nstructing on comparative fault was wrong in the context of [the] UDAP claim[.]" As we've explained, any error in giving the comparative fault instruction was harmless.

**(5)** Margaret argues that "[t]he verdict form is not consistent with the law and the instructions[.]" The verdict form given to the jury was based on the one proposed by Margaret. She proposed several changes, to which the trial court agreed after the AOAO did not object. Margaret did not object to the final version. The issues raised in her opening brief were not

7

argued when the trial court was settling the verdict form.  They are waived.  "It is unfair to the trial court to reverse on a ground that no one even suggested might be error.  It . . . does not comport with the concept of an orderly and efficient method of administration of justice."  Kawamata Farms, Inc. v. United Agri Prods., 86 Hawaiʻi 214, 248, 948 P.2d 1055, 1089 (1997).

**(6)**  Margaret argues that "[t]he Jury should have been instructed that the emergency system was a common element and ergo an AOAO maintenance responsibility."  She did not propose such an instruction.  Nor did she request such an instruction when the trial court settled jury instructions on July 2, 2021, or the morning of July 6, 2021, when the parties reviewed the final instructions.  Her argument is waived.

**(7)**  Margaret argues that "[t]he last-minute addition of the UDAP claim caused confusion[.]"  Her brief contains no citation to authority or the parts of the record relied on.  Her argument is waived.  HRAP Rule 28(b)(7).

**(8)**  Margaret argues that opinion testimony by cardiologist Edward N. **Shen**, should have been excluded.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.  In determining the issue of assistance to the trier of fact, the court may consider the trustworthiness and validity of the scientific technique or mode of analysis employed by the proffered expert.

Rule 702, Hawaii Rules of Evidence (**HRE**), Chapter 626, HRS (2016).  Dr. Shen testified about his education, training, and experience in cardiology.  The trial court qualified him as an expert in cardiology, over Margaret's objection.  We review for abuse of discretion.  State v. Engelby, 147 Hawaiʻi 222, 231, 465 P.3d 669, 678 (2020).

The doctor who performed Clifford's autopsy, Lindsey **Harle**, testified that Clifford's heart was pathologically enlarged; he had high blood pressure, microscopic myocardial

8

fibrosis (scar tissue on the heart), and aortic atherosclerosis (blockage of an artery); and he probably died of hypertensive cardiovascular disease — chronic high blood pressure causing pathological changes in the heart. Dr. Harle did not find a specific mechanism of death, but testified that "the most likely mechanism of death is either an acute heart attack or a myocardial infarction, which causes sudden death, or an acute arrhythmia or an irregular heartbeat causing sudden death."

Margaret's objection to Dr. Shen's qualification was:

> This witness is not qualified to testify as to cause of death. He treats living people, not the deceased. [The AOAO] needed to get a pathologist, and he didn't, and so we object to this witness, who's a cardiologist, opining about matters concerning the cause of Mr. Hearn's death.

The trial court ruled:

> So in this situation, we -- at least the testimony from [Margaret's expert pathologist] indicated that he had some kind of heart or cardiology issue, and so Dr. Shen's testimony could be relevant to the issue of any cardiology issue that Clifford Hearn had. And so as far as admissibility and receiving Dr. Shen as an expert, the Court will do that.
>
> [Margaret's counsel], you can cross-examine as you deem appropriate.

On this record, we cannot say the trial court abused its discretion by qualifying Dr. Shen to give opinion testimony as a cardiologist under HRE Rule 702.

Margaret also argues she "objected to Dr. Shen's opinions and sought to strike his testimony as unreliable and gross speculation" but she doesn't cite to the record where Dr. Shen's opinions were given, her objections were made, or her motion to strike appears. We are not obligated to search the record for information that should have been provided by Margaret. Lanai Co. v. Land Use Comm'n, 105 Hawaiʻi 296, 309 n.31, 97 P.3d 372, 385 n.31 (2004) (explaining that an appellate court "is not obligated to sift through the voluminous record to

verify an appellant's inadequately documented contentions").  Her argument is waived.  HRAP Rule 28(b)(7).

The Final Judgment entered by the circuit court on November 2, 2021, is affirmed.

DATED: Honolulu, Hawaiʻi, December 5, 2024.

On the briefs:

Terrance M. Revere,
Paul V.K. Smith,
for Plaintiff-Appellant/
Cross-Appellee Margaret
Hearn.

Jeffrey H.K. Sia,
Ronald Shigekane,
for Defendants-Appellees/
Cross-Appellants Association
of Apartment Owners of Sun
Village-Kauai and Certified
Management, Inc.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge